United States District Court
Southern District of Texas
**ENTERED**
September 12, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GLEN PERKINS, PAMELA PERKINS,  §
JAMES PROEHL, WILLIAM WEGHORST, §
and MARK MATTIS,                §
                                §
            Plaintiffs,         §
                                §
v.                              §   CIVIL ACTION NO. H-24-0566
                                §
PM REALTY GROUP, L.P.,          §
PM REALTY GROUP, L.P. EXECUTIVE §
DEFERRED COMPENSATION PLAN,     §
RICK KIRK, and MADISON          §
MARQUETTE REAL ESTATE SERVICES  §
LLC,                            §
                                §
            Defendant.          §

## MEMORANDUM AND ORDER

Plaintiffs, Glen Perkins, Pamela Perkins, James Proehl ("Proehl"), William Weghorst ("Weghorst"), and Mark Mattis ("Mattis"), bring this action against defendants, PM Realty Group, L.P. ("PMRG"), the PM Realty Group, L.P. Executive Deferred Compensation Plan ("EDCP"), Rick Kirk ("Kirk"), and Madison Marquette Real Estate Services, LLC ("Madison Marquette") asserting federal law claims for benefits, equitable relief, and interference pursuant to § 502 and § 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 and 1140, as well as state law claims for anticipatory repudiation, fraud, tortious interference with contract and/or business relationships, unjust enrichment, equitable accounting, constructive trust, and punitive

damages.[1]   Pending before the court is Defendants' Motion to
Dismiss Complaint ("Defendants' Motion to Dismiss") (Docket Entry
No. 21).  Also pending are Plaintiffs' Response in Opposition to
Defendants' Motion to Dismiss ("Plaintiffs' Response") (Docket
Entry No. 24), and Defendants' Reply in Support of Motion to
Dismiss Complaint ("Defendants' Reply") (Docket Entry No. 27).
Having reviewed Plaintiffs' Complaint and the documents attached
thereto, Defendants' Motion to Dismiss, Plaintiffs' Response,
Defendants' Reply, and the governing law, Defendants' Motion to
Dismiss will be granted in part and denied in part.

## I.  **Standard of Review**

Citing Federal Rule of Civil Procedure 12(b)(6), Defendants
seek dismissal of all causes of action asserted in the Plaintiffs'
Complaint.  A Rule 12(b)(6) motion tests the formal sufficiency of
the pleadings and is "appropriate when a defendant attacks the
complaint because it fails to state a legally cognizable claim."
Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert.
denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002).  To
defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff
must plead "enough facts to state a claim to relief that is
plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S. Ct.

---

[1]Complaint for Damages and Equitable Relief, Docket Entry
No. 1 ("Plaintiffs' Complaint").  See also PM Realty Group, L.P.
Amended and Restated Executive Deferred Compensation Plan ("Plan"),
Exhibit A to Plaintiffs' Complaint, Docket Entry No. 1-2.

1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965).  When considering a motion to dismiss, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  Id.  Courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).

## II.  __Plaintiffs' Factual Allegations__[2]

Plaintiffs allege that they are all former employees of PMRG, a commercial real estate firm, and that at all relevant times, Kirk was PMRG's Chief Executive Officer ("CEO") and Chairman who directed all aspects of PMRG's operations.

Plaintiffs allege that PMRG adopted the EDCP effective December 1, 2004, and amended it effective January 1, 2009.

---

[2]This section summarizes the section of Plaintiff's Complaint titled, "Facts Relevant to All Counts," Docket Entry No. 1, pp. 2-12 ¶¶ 13-86.  All page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

Plaintiffs allege that PMRG offered each of them the opportunity to participate in the Plan, and that

> Kirk, PMRG President Jimmy Gunn ("Gunn"), Chief Financial Officer W. Roger Gregory ("Gregory"), and Executive Vice President, Risk Management and Human Resources Pat Rains ("Rains") represented to one or more Plaintiffs that the Plan was a "great deal," that it was "just like a 401(k)," and that it was "governed under ERISA rules," or words to that effect.[3]

Plaintiffs allege that "Rains sent a summary plan description ("SPD") to one or more [of them] representing that the Plan offered 'investment options representing a broad range of well-known asset managers' and '"model" investment portfolios to help you automatically diversify your investments.'"[4]   Plaintiffs each accepted the offer to participate in the EDCP, albeit on different dates.   Asserting that "[t]hese representations were not true,"[5] Plaintiffs argue that

> [i]n reality, the [EDCP] offered [them] what turned out to be an illusory investment option that they called "shadow" investments.  The amounts credited to Plaintiffs were not used to purchase any investments.  Rather, PMRG credited Plaintiffs' accounts with hypothetical shares of the "shadow" funds and investments they selected, and credited their accounts with a rate of return equal to what would have been earned by these hypothetical fund shares.  In reality, PMRG and its officers including Kirk sold the Plan to Plaintiffs on the strength and security of the name brand investment options and then diverted Plaintiffs' payroll withholding savings to their own purposes.[6]

---

[3]Id. at 4 ¶ 20.

[4]Id. ¶ 23.

[5]Id. ¶ 24.

[6]Id. at 4-5 ¶ 25.

-4-

Plaintiffs allege that on May 24, 2018, Madison Marquette, a privately held commercial real estate investment and operating company, announced its intent to merge with PMRG.  Plaintiffs allege that although they had opportunities to leave PMRG before or after the effective date of the merger, "PMRG induced [them] to remain in their positions and not resign before or after the merger by promising that they would be paid the amounts in their [EDCP] accounts."[7]  Plaintiffs allege that in an email dated

> January 13, 2019, Rains represented to [them] that effective January 1, 2019, (a) the Plan "will continue to operate in accordance with all the terms of the Plan"; (b) their "Employment transition from PMRG to [Madison Marquette] was effective 1/1/2019"; (c) "it is expected that the EDCP will be terminated in 2019 which will trigger a payout of each Participant Account in 2020 (within 12 months of the EDCP termination date)"; and (d) "Current analysis indicates that Participant Account payouts upon EDCP termination will need to be made as lump sum in lieu of any existing Participant installment payout elections."[8]

Asserting that unbeknownst to them, "Madison Marquette acquired PMRG's assets but did not assume liability for Plaintiffs' deferred compensation benefits,"[9] Plaintiffs allege that "the transaction between PMRG and Madison Marquette was fraudulent and/or otherwise intended to provide an escape from liability under the Plan."[10]

---

[7] Id. at 6 ¶ 40.

[8] Id. ¶ 41 (quoting January 13, 2019, email from Rains to Proehl, Exhibit B to Plaintiff's Complaint, Docket Entry No. 1-3.

[9] Id. at 7 ¶ 47.

[10] Id. ¶ 49.

Plaintiffs allege that they were each discharged from Madison Marquette on the following effective dates: Weghorst, January 31, 2021;[11] Glen and Pamela Perkins, April 15, 2022;[12] Proehl and Mattis, September 30, 2022.[13]  Plaintiffs allege that they are all entitled to benefits from the EDCP, that they have all claimed benefits in accordance with the Plan, and that their claims have all been denied.  PMRG denied Pamela Perkins' claim because she elected to begin receiving distributions five years after her Separation from Service, and would not be entitled to payment until May of 2027.[14]  PMRG told the other Plaintiffs that their claims for benefits were denied because PMRG "does not have sufficient liquidity or cash flow to pay [its obligations]."[15]  Plaintiffs allege that on September 19, 2023, all of them except Mattis timely appealed the denial of their claims,[16] that on November 16, 2023, Kirk sent a letter to Plaintiffs' counsel identifying himself as "the sole

---

[11]Id. at 8 ¶ 60.

[12]Id. at 9 ¶ 63.

[13]Id. ¶ 69.

[14]See August 18, 2023, Letter to Pamela Perkins, included in Exhibit F to Plaintiffs' Complaint, Docket Entry No. 1-7, p. 4.

[15]Plaintiffs' Complaint, Docket Entry No. 1, p. 11 ¶ 80 (quoting August 18, 2023, Letters to Glen Perkins, Proehl, and Weghorst, included in Exhibit F to Plaintiffs' Complaint, Docket Entry No. 1-7, pp. 2, 6, and 8).

[16]Id. ¶ 81 (citing Exhibit G to Plaintiffs' Complaint, Docket Entry No. 1-8, p. 2).

member of the Committee and the Appeals Committee,"[17] and that on January 19, 2024, all of them except Mattis received letters from Kirk denying their appeals.[18]   Plaintiffs allege that Mattis has exhausted the Plan's administrative process or, alternatively, that the EDCP's failure to respond to his timely claim, combined with the denials of the claims submitted by the other similarly situated plaintiffs establishes that further appeals would be futile.[19]

### III.   <u>Analysis</u>

Defendants argue that

Plaintiffs' Complaint should be dismissed pursuant to Rule 12(b)(6) because they have not alleged a breach of the Plan documents, as is required to maintain their claim[s] for benefits.   Their state law claims are closely related to their ERISA claims and are therefore preempted by ERISA's extremely broad preemption provision.[20]

Defendants argue that Plaintiffs' claims against Kirk and Madison Marquette should be dismissed for the additional reasons that neither of them are entities that can be held liable for the claims asserted.[21]

---

[17]<u>Id.</u> ¶ 82 (citing Exhibit H to Plaintiffs' Complaint, Docket Entry No. 1-9).

[18]<u>Id.</u> at 12 ¶ 83 (citing Exhibit I to Plaintiffs' Complaint, Docket Entry No. 1-10).

[19]<u>Id.</u> ¶ 86.

[20]Defendants' Motion to Dismiss, Docket Entry No. 21, p. 6.

[21]<u>Id.</u> at 11.

## A.   Plaintiffs' ERISA Claims

Plaintiffs assert ERISA claims seeking EDCP benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); equitable relief under ERISA § 502(a)3), 29 U.S.C. § 1132(a)(3); and damages for interference with existing contracts and/or business relationships under ERISA § 510, 29 U.S.C. § 1140.[22]   Defendants argue that Plaintiffs' ERISA claims are subject to dismissal because the EDCP "is a specific type of deferred compensation plan called a 'top hat' plan, which is exempt from many of ERISA's substantive requirements,"[23] that claims for top hat plan benefits require allegations that Defendants breached plan documents, but that Plaintiffs have made no such allegations, and that the denials of benefits were consistent with Plan documents.[24]   Defendants argue that the ERISA claims asserted against Kirk and Madison Marquette should be dismissed because Plaintiffs have not pleaded any basis for their liability under ERISA, and that Plaintiffs' ERISA interference claims should be dismissed because Plaintiffs have not alleged that Plaintiffs suffered adverse employment actions, or that Defendants acted with specific discriminatory intent.[25]   Defendants have not challenged Plaintiffs' claims for equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

---

[22]Plaintiffs' Complaint, Docket Entry No. 1, pp. 12-15 ¶¶ 87-115.

[23]Defendants' Motion to Dismiss, Docket Entry No. 21, p. 11.

[24]Id.

[25]Id.

1.   <u>Count 1: Claim for EDCP Benefits</u>

Under ERISA § 502(a)(1)(B), a plan participant or beneficiary may assert a claim to recover benefits due under the terms of a plan, to enforce rights under the terms of a plan, or to clarify rights to future plan benefits.  29 U.S.C. § 1132(a)(1)(B).  The remedy for claimants under § 502(a)(1)(B) is payment of benefits or declaration of rights to future benefits.  <u>See</u> <u>Pedersen v. Kinder Morgan Inc.</u>, 622 F. Supp. 3d 520, 532 (S.D. Tex. 2022).  Asserting that they are entitled to benefits accrued in accordance with the Plan, Plaintiffs allege that

> [t]he decision denying [them] their rights and benefits due them under the Plan was arbitrary, illegal, capricious, unreasonable, discriminatory and not made in good faith and violates the terms of the Plan and is subject to enforcement by the power of this Court . . . under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)).[26]

Defendants argue that Plaintiffs' claims for Plan benefits are subject to dismissal because the Plan is a "top hat" plan, a specific type of deferred compensation plan that is exempt from many of ERISA's substantive requirements, including ERISA's minimum participation and vesting standards,[27] and because Plaintiffs have not pleaded a breach of the Plan documents.[28]  Defendants also argue that Plaintiffs bear the burden of proving that the EDCP is not a

---

[26]Plaintiffs' Complaint, Docket Entry NO. 1, p. 13 ¶ 92.

[27]Defendants' Motion to Dismiss, Docket Entry No. 21, pp. 12-14.

[28]<u>Id.</u> at 14-16.

-9-

top hat plan.[29]   Plaintiffs respond that their claims for benefits should not be dismissed because whether the EDCP is a top hat plan is not susceptible of determination on a motion to dismiss, and because they have pleaded a breach of the Plan documents.[30] Plaintiffs also argue that Defendants bear the burden of proving top hat plan status because they are the parties asserting that the EDCP is a top hat plan.[31]

        (a)   The Issue of the EDCP's "Top Hat" Status Is Not Ripe

"A 'top hat' plan is a plan that is (1) unfunded and (2) maintained 'primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.'" Tolbert v. RBC Capital Markets, Corp., 758 F.3d 619, 627 (5th Cir. 2014) (quoting 29 U.S.C. § 1101(a)(1) and Reliable Home Health Care, Inc. v. Union Central Insurance Co., 295 F.3d 505, 512 (5th Cir. 2002)).  Top hat plans are exempt from ERISA's fiduciary provisions as well as its participation, vesting, and funding provisions, but are not exempt from ERISA's reporting, administration, or enforcement provisions. Reliable Home, 295 F.3d at 512 and 515 (citing 29 U.S.C. §§ 1021-1045 (reporting, disclosure, administration, and enforcement provisions), 1051(2)

---

[29]Id. at 13.

[30]Plaintiffs' Response, Docket Entry No. 24, pp. 11-17.

[31]Id. at 10-11.

(exempting top hat plans from participation and vesting requirements), 1081(a)(3) (exempting top hat plans from minimum funding standards), and 1101(a)(1) (exempting top hat plans from fiduciary responsibilities)).  Whether a plan qualifies as a top hat plan is a question law, but "may require factual determination regarding, for example, selectivity and high compensation." Tolbert v. RBC Capital Markets Corp., Civil Action No. H-11-0107, 2015 WL 2138200, at *3 (S.D. Tex. April 28, 2015)(quoting Tolbert, 758 F.3d at 627).

Citing selected terms of the Plan attached to Plaintiffs' Complaint, Defendants argue that the EDCP is a top hat plan because the Plan's plain language states that "the purpose of the Plan [is] to attract and retain key employees by providing Participants with an opportunity to defer receipt of a portion of their salary, bonus, commission, and other specified compensation," and that "[t]he Plan is unfunded for federal tax purposes and is intended to be an unfunded arrangement for eligible employees who are part of a select group of management or highly compensated employees of the Participating Employers within the meaning of Sections 201(2), 301(a)(3), and 401(a)(1) of ERISA."[32]  While the parties do not dispute that the EDCP provides deferred compensation, the Plan language alone is not sufficient to establish that the primary

---

[32]Defendants' Motion to Dismiss, Docket Entry No. 21, pp. 13-14 (quoting the Plan, Docket Entry No. 1-2, p. 4 Article I).

purpose of the plan is to provide deferred compensation for a select group of management or highly compensated employees.  The Fifth Circuit has made clear that these factors can constitute fact issues.  See Tolbert, 758 F.3d at 627 ("The resolution of the dispute over the 'top hat' exemption may require factual determinations regarding, for example, selectivity and high compensation.").  Moreover, Defendants have not cited any case in which a court granted a motion to dismiss upon concluding that an ERISA plan is a top hat plan based solely on review of plan language before discovery has occurred.  Instead, the cases on which Defendants rely in support of their argument that the EDCP is a top hat plan were all decided on more developed records.  See e.g., Sikora v. UPMC, 876 F.3d 110 (3d Cir. 2017) (summary judgment); and Reliable Home, 295 F.3d at 505 (bench trial). Plaintiffs have, however, cited several cases in which courts have denied motions to dismiss based on similar records.  See e.g., Loftus v. Federal Deposit Insurance Corp., 989 F. Supp. 2d 483, 492 n. 3 (D.S.C. 2013); MacDonald v. Summit Orthopedics, Ltd., 681 F. Supp. 2d 1019, 1023-24 (D. Minn. 2010).  Regardless of which party bears the burden of proving the EDCP's top hat plan status, the current record is not sufficient for the court to find that the EDCP is a top hat plan.  Therefore, Plaintiffs' claims for EDCP benefits are not subject to dismissal on that basis.

(b)   Plaintiffs Have Pleaded a Breach of Plan Documents

Defendants argue that regardless of whether the court finds that the EDCP is a top hat plan, Plaintiffs' claims for benefits should be dismissed because Plaintiffs have not pleaded a breach of the plan documents.[33]   Defendants argue that

> Plaintiffs allege that they "are entitled to payment of retirement benefits under the Plan's terms" and that Defendants' decision to deny Plaintiffs those benefits "violates the terms of the Plan." Compl. ¶¶ 89-92, 100-03. However, Plaintiffs fail to explain how the decision to deny benefits violated the terms of the Plan. With the exception of Pamela Perkins, whose claim was denied because her installment payments are not scheduled to begin until May 2027, Dkt. 1-7 at 4, the claims for benefits were denied because [PMRG] lacks funds to pay those benefits. Dkt. 1-4; Dkt. 1-7.
>
> This denial is consistent with the terms of the Plan[, which . . . provides that the "[o]bligations established under the terms of the Plan may be satisfied from the general funds of [PMRG]" and that Participants have no "right, title or interest whatever" in [PMRG]'s assets. Dkt. 2-1 at Art. 11.1. The Plan states that nothing in the Plan established a trust or fiduciary relationship of any kind, and "[t]o the extent that any person acquires a right to receive payments [under this Plan], such rights are no greater than the right of an unsecured general creditor of [PMRG]." Id. [PMRG] is insolvent and thus cannot pay Plaintiffs' benefits.[34]

Citing ¶¶ 92 and 103 of their Complaint, Plaintiffs respond that they have alleged breach of the Plan.[35]   Plaintiffs have also

_____

[33]Id. at 14-16.

[34]Id. at 14-15.   See also Defendants' Reply, Docket Entry No. 27, pp. 6-7 (arguing that "[r]egardless of top hat status, the plain terms of the Plan provide that Plaintiffs are unsecured creditors with no right to [PMRG]'s assets").

[35]Plaintiffs' Response, Docket Entry No. 24, p. 15.

alleged that at all relevant times they were qualified and vested participants in the Plan,[36] and that Defendants refused to perform as required by the Plan documents.[37]   Plaintiffs acknowledge that Kirk sent four of them letters stating that PMRG could not pay their claims "due to [PMRG]'s cash flow deficiency,"[38] but allege "on information and belief" that "the information in Kirk's letters was not true; PMRG's LinkedIn page reflects that it currently 'provides leasing and management services to a diverse portfolio of 330 assets in 24 states and manages an investment portfolio valued at over $6 billion.'"[39]   In their Reply, Defendants acknowledge that "Plaintiffs' claims rely on a breach of the terms of the Plan,"[40] but argue that "the Plan's terms clearly foreclose [Plaintiffs'] claims for benefits."[41]

Even though top hat plans are exempt from many of ERISA's substantive requirements, they are not exempt from ERISA's reporting, disclosure, administration, or enforcement provisions. Reliable Home, 295 F.3d at 515 (citing 29 U.S.C. §§ 1021–1045).

---

[36]Id. (citing Plaintiffs' Complaint, p. 5 ¶ 33).

[37]Id. (citing Plaintiffs' Complaint, pp. 9-12 ¶¶ 73-83).

[38]Plaintiffs' Complaint, pp. 9-10 ¶ 74 (quoting March 1, 2023, letter from Kirk to Weghorst) and 10 ¶ 75 (alleging that "Glen Perkins, Pamela Perkins, and Proehl received similar letters from Kirk").

[39]Id. at 10 ¶ 76 (quoting PMRG's LinkedIn page, Exhibit D to Plaintiffs' Complaint, Docket Entry No. 1-5, p. 2).

[40]Defendants' Reply, Docket Entry No. 27, p. 6.

[41]Id.

-14-

Top hat plans are controlled by the terms of the plan documents, and enforcement of those terms is governed by the federal common law of contracts.  See Spacek v. Maritime Association, 134 F.3d 283, 287-288, 296-298 (5th Cir. 1998), abrogated on other grounds by Central Laborers' Pension Fund v. Heinz, 124 S. Ct. 2230, 2235 (2004).  "The elements of a breach of contract claim under federal common law are: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach."  United States v. Charter Home Health, L.L.C., Civil Action No. 19-00881-BAJ-RLB, 2020 WL 7311347, at * 3  (M.D. La. December 11, 2020) (quoting Express Damage Restoration, LLC v. Wright National Flood Insurance Co., No. 1:19-cv-24127-JLK, 2019 WL 6699702, at * 2 (S.D. Fla. December 9, 2019)).  Plaintiffs' allegations that at all relevant times they were qualified and vested participants in the Plan, which constitutes a valid contract,[42] that Defendants were obligated by the Plan documents to pay their claims for benefits,[43] that Defendants refused to perform as obligated,[44] and that Plaintiffs were damaged thereby,[45] are sufficient to state an ERISA claim for benefits based on the Plan documents even if the EDCP is, as Defendants contend, a top hat plan.

---

[42]Plaintiffs' Complaint, pp. 5 ¶ 33, and 12 ¶ 88.

[43]Id. at 3 ¶¶ 18-19, 9 ¶ 71, and 12 ¶¶ 89-90.

[44]Id. at 9-12 ¶¶ 73-83.

[45]Id. at 12 ¶ 85, and 13 ¶ 96.

Defendants' argument that Plaintiffs' claims for benefits are subject to dismissal regardless of the EDCP's top hat status because PMRG is insolvent does not warrant dismissal of Plaintiffs' claims for benefits.  Although Defendants argue that ¶ 105 of Plaintiffs' Complaint admits that PMRG is insolvent,[46] Plaintiffs have not admitted that PMRG is insolvent.  To the contrary, Plaintiffs have acknowledged that Defendants told them that PMRG is insolvent as the reason for denying their claims for benefits,[47] but Plaintiffs allege that Defendants' assertion of PMRG's insolvency is not true,[48] and that "[n]otwithstanding its alleged insolvency, PMRG has continued to sell and transfer substantial commercial real estate . . ."[49]  Like the issue of the EDCP's status as a top hat plan, whether Defendants' assertion of PMRG's insolvency is a valid basis for denying the Plaintiffs' claims for benefits is an issue that cannot be decided on the pleadings alone.

      (c)   Claims for EDCP Benefits Asserted Against Kirk in His Personal Capacity Are Subject to Dismissal

Citing 29 U.S.C. § 1132(d)(2), and asserting that "[t]o hold a corporate officer personally liable under ERISA for the alleged

---

[46]Defendants' Reply, Docket Entry No. 27, p. 6.

[47]Plaintiffs' Complaint, Docket Entry No. 1, pp. 9-10 ¶¶ 74-75.

[48]Id. at 10 ¶ 76 (citing PMRG's LinkedIn page, Exhibit D to Plaintiffs' Complaint, Docket Entry No. 1-5, p. 2).

[49]Id. at 14 ¶ 107.  See also Plaintiff's Response, Docket Entry No. 24, pp. 15-16 n. 2 ("Defendants' only basis for non-payment appears to be alleged inability to pay. . . [T]he Plan does not excuse non-payment for alleged inability to pay.").

misdeeds of the company, Plaintiffs must pierce the corporate veil,"[50] Defendants seek dismissal of the claims asserted against Kirk in his individual capacity because "Plaintiffs have not pleaded any basis on which Rick Kirk can be held liable in his individual capacity."[51]  Plaintiffs do not dispute that Kirk cannot be held personally liable for their claims for ERISA benefits. Instead, citing a number of cases including <u>Graham v. Metropolitan Life Insurance Co.</u>, Civil Action No. H-09-3803, 2009 WL 5205354, at *1 (S.D. Tex. December 23, 2009), for holding that "[t]he only proper defendants for an ERISA claim are the ERISA Plan, the Plan Administrator, and the Plan Sponsor,"[52] Plaintiffs argue that "Kirk is the administrator of the Plan; he therefore is a proper defendant to a claim for unlawful denial of benefits in his capacity as such."[53]  Because Plaintiffs acknowledge that any claims asserted against Kirk must in his capacity as Plan administrator, Plaintiffs' claims for benefits against him in his personal capacity will be dismissed.

> (d)  Claims for EDCP Benefits Asserted Against Madison Marquette Are Not Subject to Dismissal

Asserting that Madison Marquette is a mere continuation of PMRG and that the transaction between PMRG and Madison Marquette

---

[50]Defendants' Motion to Dismiss, Docket Entry No. 21, p. 18.

[51]<u>Id.</u>

[52]Plaintiffs' Response, Docket Entry No. 24, p. 18.

[53]<u>Id.</u> at 19.

was intended to provide an escape from liability for the EDCP,[54] Plaintiffs allege that Madison Marquette is liable to them for benefits as PMRG's successor.[55]  Citing Articles 2.12 and 2.27 of the Plan, Defendants argue that Plaintiffs' ERISA claims for benefits and equitable relief asserted against Madison Marquette should be dismissed because Madison Marquette is neither the Company nor a Participating Employer under the Plan, Madison Marquette is not a successor of PMRG with respect to the Plan, and Plaintiffs have not alleged that Madison Marquette controls Plan administration.[56]

Citing inter alia Schutze v. Financial Computer Software, Civil Action No. 3:04-CV-0276-H, 2006 WL 2842008, at * 10 (N.D. Tex. September 29, 2006), Plaintiffs respond that Madison Marquette can be held liable for their ERISA claims as PMRG's successor.[57] Defendants reply that Plaintiffs' arguments are foreclosed by the Fifth Circuit's holding in Taylor v. Bank One Texas, 992 F.2d 324, 1993 WL 152149 (5th Cir. 1993), which rejected the district court's holding that corporate successorship theories made the purchaser entity liable for ERISA benefits after an asset sale.[58]

---

[54]Plaintiffs' Complaint, Docket Entry No. 1, pp. 7-8 ¶¶ 47-59.

[55]Id. at 13 ¶ 95.

[56]Defendants' Motion to Dismiss, Docket Entry No. 21, pp. 18-19.

[57]Plaintiffs' Response, Docket Entry No. 24, pp. 19-22.

[58]Defendants' Reply, Docket Entry No. 27, pp. 10-11.

"[T]he general rule of corporate liability is that, when a corporation sells all of its assets to another, the latter is not responsible for <u>the seller's debts or liabilities</u>, except [under certain enumerated circumstances.]" <u>Smith v. Regional Transit Authority</u>, 827 F.3d 412, 421 (5th Cir. 2016) (quoting <u>Golden State Bottling Co., Inc. v. NLRB</u>, 94 S. Ct. 414, 424 n. 5 (1973) (identifying the "enumerated circumstances" as "where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability."). Successor liability is a common law exception to the general rule of corporate liability enunciated by the Supreme Court in labor law cases to vindicate important federal statutory policies. <u>See</u> <u>Rojas v. TK Communications, Inc.</u>, 87 F.3d 745, 749-50 (5th Cir. 1996) (citing <u>inter alia</u> <u>John Wiley & Sons, Inc. v. Livingston</u>, 84 S. Ct. 909, 915 (1964) (holding successor employer had duty to arbitrate under preexisting agreement where there was "substantial continuity" in the business both before and after the change in ownership); <u>Howard Johnson Co., Inc. v. Detroit Local Joint Executive Board, Hotel and Restaurant Employees and Bartenders International Union, AFL-CIO</u>, 94 S. Ct. 2236, 2243 n. 9 (1974) (recognizing that the question of whether to hold a new employer to the obligations of the former employer is one that must be considered "in light of the facts of each case and the

-19-

particular legal obligation at issue"); and <u>Fall River Dyeing & Finishing Corp. v. National Labor Relations Board</u>, 107 S. Ct. 2225, 2234 (1987) (holding that a new employer was free to disregard the terms of its predecessor's collective bargaining agreement in hiring the predecessor's employees and that it had no duty to arbitrate unless there was substantial continuity between the former and latter's business operations)). In <u>Rojas</u>, the Fifth Circuit reasoned that the doctrine of successor liability applied to claims asserted under Title VII of the Civil Rights of 1964, explaining that the doctrine is intended "to protect an employee when the ownership of his employer suddenly changes." <u>Id.</u> at 750. In <u>Rojas</u> the Fifth Circuit adopted a nine-factor test for showing successor liability in a Title VII discrimination case:

> (1) [W]hether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

<u>Id.</u>

In <u>Powe v. May</u>, 62 F. Appx 557, 2003 WL 1202795, at * 1 (5th Cir. 2003) (per curiam), the Fifth Circuit assumed, without deciding, that the successor liability doctrine applies to Fair

Labor Standards Act cases, and identified the three main criteria for determining successor liability as "(1) a substantial continuity of business operations from the previous entity to its successor; (2) notice to the successor; and (3) the successor's ability to provide relief." Since Rojas district courts in this circuit have extended the doctrine of successor liability to other areas of federal law, including ERISA. See Schutze, 2006 WL 2842008, at * 10. A number of circuit courts have done the same. See e.g., New York State Teamsters Conference Pension and Retirement Fund v. C&S Wholesale Grocers, Inc., 24 F.4th 163, 176 & n. 52 (2d Cir.), cert. denied, 142 S. Ct. 2876 (2022) ("Federal courts have further expanded the boundaries of 'successor liability' to include other federal statutory schemes, such as ERISA") (citing inter alia Einhorn v. M.L. Ruberton Construction Co., 632 F.3d 89, 99 (3rd Cir. 2011) (holding that a purchaser of assets may be held liable for a seller's delinquent ERISA fund contributions))). See also Trustees for Alaska Laborers-Construction Industry Health & Security Fund v. Alaska Laborers v. Ferrell, 812 F.2d 512, 515-16 (9th Cir. 1987)(finding successor may be held liable for predecessor's failure to make retirement plan contributions).

Plaintiffs have alleged that Madison Marquette retained the same employees, the same supervisory personnel, the same facilities and physical locations, provided the same services, retained the

-21-

same name, and held itself out as the continuation of PMRG.  If true, these allegations are sufficient to establish a substantially continuity of business operations from PMRG to Madison Marquette.[59] Plaintiffs have also alleged that Madison Marquette acquired PMRG's assets but did not assume liability for their deferred compensation benefits.[60]  These allegations, which Defendants do not dispute, show that Madison Marquette not only had notice of Plaintiffs' claims under the Plan before it acquired PMRG's assets, but also that Madison Marquette has the ability to provide relief.  Assuming without deciding that the successor liability may be applied to Plaintiff's ERISA benefits claims, the court concludes that Plaintiffs have plausibly alleged that Madison Marquette may be held liable as PMRG's successor.  The Fifth Circuit's holding in Taylor, 992 F.2d at 324, 1993 WL 152149, at *7–*8, does not preclude this conclusion because the plan at issue there was a welfare benefits plan that was exempt from ERISA's participation, coverage, vesting, and funding requirements.  Defendants' reliance on Taylor is based on their argument that the EDCP is a top hat plan that is similarly exempt from ERISA's participation, coverage, vesting, and funding rules.[61]  However, for the reasons stated above

_____

[59]Plaintiffs' Complaint, Docket Entry No. 1, p. 8 ¶ 54

[60]Id. at 7 ¶¶ 47–49.

[61]Defendants' Reply, Docket Entry No. 27, p. 10 (comparing the welfare benefit plan at issue in Taylor to the top hat plan that they argue is at issue here).

in § III.A.1(a), the court has already concluded that whether the EDCP is a top hat plan cannot be determined on the current record. The court concludes that Plaintiffs' allegations against Madison Marquette based on successor liability for the failure to pay their claims for Plan benefits are plausible, but makes no finding on whether Madison Marquette actually bears successor liability.

###    2.    Count 3: Claims for Interference with ERISA Rights

Plaintiffs allege that Defendants violated ERISA § 510, 29 U.S.C. § 1140, by "discriminat[ing] against [them] for the purpose of interfering with the attainment of rights or benefits to which they may become entitled under the Plan or ERISA."[62]

ERISA § 510 makes it unlawful

> for any person to discharge, fine, suspend, expel, discipline, or discriminate against a  participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . .

29 U.S.C. § 1140.  ERISA § 510

> consists of two components: (1) an anti-retaliation component, which prohibits an employer from retaliating against an employee for exercising ERISA rights; and (2) an anti-interference component, which prohibits an employer from interfering with an employee's future rights to benefits.

Miles-Hickman v. David Powers Homes, Inc., 589 F. Supp. 2d 849, 876 (S.D. Tex. 2008).  To sustain an interference claim, Plaintiffs

---

[62]Plaintiffs' Complaint, Docket Entry No. 1, p. 15 ¶ 114.

must allege facts capable of establishing: "(1) [a] prohibited (adverse) employer action; (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled." Bodine v. Employers Casualty Co., 352 F.3d 245, 250 (5th Cir. 2003).

Citing inter alia Sherrod v. United Way Worldwide, 821 F. Appx 311, 316 (5th Cir. 2020) (per curiam), cert. denied, 141 S. Ct. 1389 (2021), Defendants argue that

> Plaintiffs' § 510 must be dismissed because they have pleaded neither a prohibited adverse employment action nor specific discriminatory intent.  Plaintiffs do not allege they were "discharge[d], fine[d], suspend[ed], expel[led], or discipline[d]" by [PMRG].  Instead, they claim they were "discriminated against," Comp. ¶ 114, but they do not plead any facts explaining how, nor do they identify a specific right Defendants interfered with. This is insufficient to plead a § 510 claim.[63]

Plaintiffs respond that their § 510 claims should not be dismissed because their "termination by [PMRG] is certainly an adverse employment action,"[64] and

> [a]lternatively, their transfer to Madison Marquette . . . is because Defendants claimed that it did not constitute a "separation of service" that would have triggered [their] right to payment of benefits under the Plan, i.e., rights to which they were entitled or may become entitled.[65]

Asserting they have "alleged that Defendants structured the merger

---

[63]Defendants' Motion to Dismiss, Docket Entry No. 21, p. 17.

[64]Plaintiffs' Response, Docket Entry No. 24, p. 17.

[65]Id.

to evade liability under the Plan,"[66] Plaintiffs argue that they have satisfied their burden.[67]  Defendants reply that the transfer of Plaintiffs' employment from PMRG to Madison Marquette was not an adverse employment action, and that the decision that a Separation of Service would occur only upon termination of employment from Madison Marquette is expressly condoned by Treasury Regulation, 26 C.F.R. 1.409A-1(h)(4).[68]

As a legal matter, what constitutes an adverse action in the context of ERISA § 510 is unclear.  Most cases involve a termination of employment, and cases that do not tend to focus on the "intent" element more than the "adverse act" element.  See Cervantes v. 3NT, LLC, No. EP-19-CV-00383-DCG, 2022 WL 1308830, at * 6 (W.D. Tex. May 2, 2022) (citing inter alia McGann v. H&H Music Store, 946 F.2d 401, 404-08 (5th Cir. 1991), cert. denied sub nom. Greenberg v. H&H Music Co., 113 S. Ct. 482 (1992) (recognizing specific intent to interfere with a specific plaintiff's benefits as an element of a § 510 claim)).  Plaintiffs' allegations that Defendants transferred their employment from PMRG to Madison Marquette without recognizing a Separation of Service triggering their rights to payment of Plan benefits, and that "the transaction between PMRG and Madison Marquette was fraudulent and/or otherwise

---

[66]Id. at 18.

[67]Id.

[68]Defendants' Reply, Docket Entry No. 27, pp. 11-12.

intended to provide an escape from liability under the Plan,"[69] plausibly alleges that Plaintiffs experienced an adverse employment action undertaken with specific intent to interfere with their rights to Plan benefits.  Defendants' motion to dismiss Plaintiffs' ERISA § 510 claims for interference with ERISA rights will be denied.

## B.   Plaintiffs' State Law Claims

Citing ERISA § 514, 29 U.S.C. § 1144, Defendants argue that Plaintiffs' state law claims for anticipatory repudiation, fraud, tortious interference with contract and/or business relationships, unjust enrichment, equitable accounting, constructive trust, and punitive damages, should all be dismissed as preempted by ERISA.[70] Plaintiffs respond that their state law claims are not preempted.[71]

### 1.   ERISA Preemption Law

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans.  To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan

---

[69]Plaintiffs' Complaint, Docket Entry No. 1, p. 7 ¶ 49.

[70]Defendants' Motion to Dismiss, Docket Entry No. 21, pp. 19-22.  See also Defendants' Reply, Docket Entry No. 27, pp. 12-18.

[71]Plaintiffs Response, Docket Entry No. 24, pp. 22-32.

regulation would be 'exclusively a federal concern.'" <u>Aetna Health Inc. v. Davila</u>,124 S. Ct. 2488, 2495 (2004)(quoting <u>Alessi v. Raybestos-Manhattan, Inc.</u>, 101 S. Ct. 1895, 1906 (1981)).  There are two types of ERISA preemption: (1) Express or conflict preemption; and (2) complete preemption.  <u>E.I. DuPont de Nemours & Co. v. Sawyer</u>, 517 F.3d 796, 799 (5th Cir. 2008).

ERISA's express preemption clause states that with certain exceptions not applicable in this case, ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." <u>Shaw v. Delta Air Lines, Inc.</u>, 103 S. Ct. 2890, 2900 (1983).  "Although the term 'relate to' is intended to be broad, 'preemption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans." <u>Lewis v. Bank of America, N.A.</u>, 343 F.3d 540, 544 (5th Cir. 2003), <u>cert. denied</u>, 124 S. Ct. 1426 (2004) (quoting <u>New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.</u>, 115 S. Ct. 1671, 1680 (1995)).  When "the facts underlying the state law claim bear some relationship to an employee benefit plan, [the court's] task is to evaluate the nexus between the state law and ERISA, in view of ERISA's statutory objectives." <u>Lewis</u>, 343 F.3d at 544.

Relevant statutory objectives include establishing uniform national safeguards "with respect to the

> establishment, operation, and administration of [employee benefit] plans," . . . and "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans."

Id. (quoting 29 U.S.C. § 1001(a) and (b), respectively).

With these objectives in mind, the Fifth Circuit has adopted a two-part test for conflict preemption.  Under this test

> [a] defendant pleading preemption must prove that: (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of [an ERISA] Plan; and (2) the claim directly affects the relationship[s] among traditional ERISA entities — the employer, the plan and its fiduciaries, and the participants and beneficiaries."

Bank of Louisiana v. Aetna U.S. Healthcare, Inc., 468 F.3d 237, 242 (5th Cir. 2006), cert. denied, 127 S. Ct. 1826 (2007) (quoting Mayeaux v. Louisiana Health Service and Indemnity Co., 376 F.3d 420, 432 (5th Cir. 2004)).  This type of preemption "provid[es] a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim."  Arana v. Ochsner Health Plan, 338 F.3d 433, 439 (5th Cir. 2003).  State law claims that require inquiry into plan administration or challenge a denial of benefits under an ERISA plan can implicate an area of federal concern.  See id.  See also Smith v. Texas Children's Hospital, 84 F.3d 152, 155 (5th Cir. 1996) ("[A] state-law claim by an ERISA plan participant against her employer is preempted when based upon a denial of benefits under the defendant's ERISA plan.").  For the second part of the test, "the critical distinction is not whether the parties to a

claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA." Bank of Louisiana, 468 F.3d at 243.

Complete preemption arises under ERISA § 502(a), 29 U.S.C. § 1132(a), which "set[s] forth a comprehensive civil enforcement scheme that would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." E.I. DuPont, 517 F.3d at 797 (internal quotation marks and citations omitted). Therefore, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Id.

2. <u>Application of ERISA Preemption Law to Plaintiff's State Law Claims</u>

(a)   Count 4: Anticipatory Repudiation

Defendants argue that Plaintiffs' anticipatory repudiation claim is preempted because it "makes explicit reference to the Plan and is premised on an alleged denial of benefits."[72]   Plaintiffs argue that this claim is not preempted,[73] but acknowledge that it

---

[72]Defendants' Motion to Dismiss, Docket Entry No. 21, p. 20 (citing Plaintiffs' Complaint, Docket Entry No. 1, p. 15 ¶ 117).

[73]Plaintiffs' Response, Docket Entry No. 24, p. 30.

is based on "affirmative statements to [them] that Defendants will not perform under the Plan."[74]  Because Plaintiffs allege that "PMRG absolutely repudiated its obligations to pay Plaintiffs their benefits under the Plan without just excuse,"[75] this claim clearly references and relates to an ERISA-governed employee benefit plan. This claim is preempted because by raising Plaintiffs' right to receive benefits under the Plan, it addresses an area of exclusive federal concern that requires construction of plan terms and directly affects the relationships between the plan and the participants.  See Bank of Louisiana, 468 F.3d at 242-43.  See also Tilton v. Radiation Oncologists, P.A., 409 F. Supp. 2d 560, 567 (D. Del. 2006) (holding that ERISA preempted anticipatory repudiation claim similarly based on defendants' stated intent to stop making deferred compensation payments required by an ERISA plan).

(b)  Count 5: Fraud

Defendants argue that Plaintiffs' fraud claim is preempted because the "alleged fraud resulted in them not being paid 'their deferred compensation benefits in full.'"[76]  Plaintiffs argue that this claim is not preempted, because Defendants fraudulently

---

[74]Id. at 31 (citing

[75]Plaintiffs' Complaint, Docket Entry No. 1, p. 15 ¶ 117.

[76]Defendants' Motion to Dismiss, Docket Entry No. 21, p. 21 (quoting Plaintiffs' Complaint, Docket Entry No. 1, p. 16 ¶ 128).

induced them to remain in their positions and not resign both
before and after the merger by promising that they would be paid
the amounts in their deferred compensation plans.[77]   Plaintiffs
argue that their "fraudulent inducement claims are not preempted by
ERISA because they do not seek solely to recover ERISA plan
benefits; rather, they also seek damages for injuries incurred when
Defendants induced them to give up other employment
opportunities."[78]   This argument is not supported by Plaintiffs'
allegations of fraud, where the only injury alleged is not lost
employment opportunities but, instead, that "had [they] terminated
employment prior to January 1, 2019, PMRG and/or the Plan would
have paid them their deferred compensation benefits in full."[79]   The
cases that Plaintiffs cite in support of the argument that their
fraud claims are not preempted are distinguishable on this basis.
In Smith, 84 F.3d at 155, the alleged injury was the loss of
benefits accrued in an ERISA plan maintained by another employer,
and in Hobson v. Robinson, 75 F. App'x 949, 956 (5th Cir. 2003),
the defendant "allegedly fraudulently induced Hobson to surrender
his pre-existing insurance coverage in order to obtain an ERISA
plan."   Because the only injury that Plaintiffs allege as a result

---

[77]Plaintiffs' Response, Docket Entry No. 24, p. 22 (citing
Plaintiffs' Complaint, Docket Entry No. 1, pp. 6-7 ¶¶ 36, 40-41,
and 50).

[78]Id. at 25.

[79]Plaintiffs' Complaint, Docket Entry No. 1, p. 16 ¶ 128.

of Defendants' fraud is Defendants' denial of their claims for Plan benefits, Plaintiffs' fraud claims are preempted. <u>See</u> <u>Reliable Home</u>, 295 F.3d at 515-16 (holding a fraud claim preempted because "[t]he underlying conduct alleged by Reliable cannot be severed from its connection to the Plan"). <u>See also</u> <u>Metropolitan Life Insurance Co. v. Taylor</u>, 107 S. Ct. 1542, 1546 (1987) (holding that suits by beneficiaries to recover benefits from a covered plan are preempted because ERISA § 502(a)(1)(B) provides an exclusive federal cause of action for such disputes).

> (c)   Count 6: Tortious Interference with Contract and/or Business Relationships

Defendants argue that Plaintiffs' claims for tortious interference with contract and/or business relationships is preempted because it "makes explicit reference to the Plan and the participants' right to receive benefits thereunder."[80]   Plaintiffs argue that this claim is not preempted because it "does not lie against a party to the contract[, . . . and t]o the extent that Madison Marquette is not PMRG's successor, [their] tortious interference claims against Madison Marquette are not preempted by ERISA."[81]   Plaintiffs do not dispute that their tortious interference claims are preempted as asserted against PMRG, the

---

[80]Defendants' Motion to Dismiss, Docket Entry No. 21, p. 21 (citing Plaintiffs' Complaint, Docket Entry No. 1, p. 17 ¶ 134).

[81]Plaintiffs' Response, Docket Entry No. 24, p. 25.

Plan, and Kirk in his capacity as Plan administrator.

In pertinent part Plaintiffs allege:

131. The Plan was a valid and enforceable contract
between Plaintiffs and PMRG.

132. Madison Marquette was not a party to the Plan.

. . .

136. Plaintiffs sustained actual harm, damage and loss
due to PMRG's failure to provide the benefits and
payments required by the Plan.

137. . . . Madison Marquette's interference was a
proximate cause of Plaintiffs' damage.

138. Madison Marquette therefore is liable to Plaintiffs
for tortious interference with contract and/or
business relations.[82]

The only allegation of fact underlying this claim is that "Madison
Marquette conspired with PMRG to induce Plaintiffs to remain in
their positions and not resign before or soon after the merger."[83]

Because Plaintiffs's tortious interference claims are based
solely on allegations that they "sustained actual harm, damage, and
loss due to PMRG's failure to provide the benefits and payments
required by the Plan,"[84] this claim clearly references and relates
to an ERISA-governed employee benefit plan, and to the denial of
their claims for Plan benefits.  Because Plaintiffs' allege that

---

[82]Plaintiffs' Complaint, Docket Entry No. 1, pp. 16-17 ¶¶ 131-32 and 136-38.

[83]Id. at 7 ¶ 50.

[84]Id. at 17 ¶ 136.

Madison Marquette tortiously interfered with PMRG's payment of benefits required by the Plan, this claim cannot be resolved without first determining whether the payment of benefits was in fact required by the Plan. This claim is therefore preempted because it cannot be resolved without construing the terms of the Plan, and because the denial of Plan benefits affects the relationship between the Plan and the plan participants. <u>See Ingersoll-Rand Co. v. McClendon</u>, 111 S. Ct. 478, 483 (1990) ("We have no difficulty in concluding that the cause of action which the Texas Supreme Court recognized here — a claim that the employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund — 'relate[s] to' an ERISA-covered plan within the meaning of § 514(a), and is therefore pre-empted."). <u>See also</u> <u>In re IT Group, Inc.</u>, 305 B.R. 402, 414 (Bankr. D. Del. 2004) ("Courts have generally held that, to the extent that recovery is sought of sums deferred under employee benefit plans, ERISA preempts . . . claims for tortious interference.") (collecting cases), <u>aff'd</u>, 323 B.R. 578 (D. Del. 2005), <u>aff'd as amended</u>, 448 F.3d 661 (3d Cir. 2006).

    (d)  Count 7: Unjust Enrichment

    Defendants argue that Plaintiffs' unjust enrichment claim is preempted because

-34-

> Plaintiffs contend that they "conferred benefits on PMRG,
> Madison Marquette, and Kirk," that those benefits were
> unjustly retained, and that conduct "proximately caused
> financial damages to Plaintiffs." Compl. ¶¶ 141, 143,
> 144. The benefits retained must be those allegedly owed
> to Plaintiffs under the Plan, as those are the only
> benefits referenced in the Complaint.[85]

Plaintiffs argue that this claim is not preempted,[86] because it "does not rely upon the existence of the Plan for recovery[, and] . . . does not solely seek recovery of benefits under the Plan."[87] Plaintiffs allege that they "conferred benefits on PMRG, Madison Marquette, and Kirk,"[88] but fail to allege facts capable of establishing that the benefits conferred on Defendants differ from the only benefits otherwise referenced in their Complaint, i.e., the Plan benefits that they allege Defendants wrongfully denied them. The court therefore concludes that this claim is preempted because it relates to an ERISA-governed employee benefit plan, and seeks as damages benefits allegedly due under the Plan. See Shaw, 103 S. Ct. at 2900. See also Access Mediquip L.L.C. v. UnitedHealthcare Insurance Co., 662 F.3d 376, 386 (5th Cir. 2011), adhered to on reh'g en banc, 698 F.3d 229 (5th Cir. 2012)(en banc), cert. denied, 133 S. Ct. 1467 (2013) (holding an unjust enrichment claim preempted because recovery depended on the participant's right to ERISA plan benefits).

---

[85]Defendants' Motion to Dismiss, Docket Entry No. 21, p. 21.

[86]Plaintiffs' Response, Docket Entry No. 24, p. 31.

[87]Id. at 32.

[88]Plaintiffs' Complaint, Docket Entry No. 1, p. 17 ¶ 141.

(e)   Count 8: Equitable Accounting

Defendants argue that Plaintiffs' equitable accounting claim is preempted because "the alleged wrongful conduct is the failure to pay Plaintiffs the benefits they claim they are owed under the Plan."[89]   Plaintiffs argue that this claim is not preempted,[90] but in support of this argument cite two cases in which courts denied motions to dismiss claims for equitable accounting asserted under ERISA § 502(a)(3), not state law: <u>Providence Groups, LLC v. Omni Administrators, Inc.</u>, No. 2:20-CV-05067-FB-SJB, 2021 WL 3675149, at *3 (E.D.N.Y. August 19, 2021) (denying motion to dismiss claim for equitable accounting against ERISA fiduciary pursuant to 29 U.S.C. § 1132(a)(3); and <u>Sturm, Ruger Co. v. Connecticut General Life Insurance Co.</u>, No. CIV. 93-38-SD, 1994 WL 470583, at *3-*4 (D.N.H. August 29, 1994) (denying motion to dismiss claim for equitable accounting under the federal common law of ERISA).[91]   Because Plaintiffs' equitable accounting claim is based on allegations that they "are entitled to an accounting from Defendants and the return of all monies unjustly received by Defendants as a result of their aforesaid wrongful, tortious, and inequitable conduct,"[92] and

---

[89]Defendants' Motion to Dismiss, Docket Entry No. 21, p. 21 (citing Plaintiffs' Complaint, Docket Entry No. 1, p. 18 ¶ 147).

[90]Plaintiffs' Response, Docket Entry No. 24, pp. 29-30.

[91]<u>Id.</u> at 30.

[92]Plaintiffs' Complaint, Docket Entry No. 1, p. 18 ¶ 147.

because the wrongful conduct alleged is the failure to pay Plaintiffs the benefits they claim they are owed under the Plan, this claim relates to an ERISA-governed employee benefit plan and, therefore, is preempted.  See Shaw, 103 S. Ct. at 2900.

        (f)   Count 9: Constructive Trust

Defendants argue that Plaintiffs' constructive trust claim is preempted because it "is premised on their allegation that funds from the sale of the Properties should be used to pay their benefits under the Plan."[93]  Plaintiffs argue that this claim is not preempted, because it "is not a separate substantive claim that is preempted by ERISA but is merely a remedy which is not preempted by ERISA."[94]  In support of this argument Plaintiffs rely on In re Washington Mutual, Inc., 450 B.R. 490, 495-97 (Bankr. D. Del. 2011), a case in which the plan participants asserted entitlement to a constructive trust not as a separate claim for relief, but as an equitable remedy for the defendants' violation of ERISA § 502(a)(1)(B).[95]  Unlike the plaintiffs in Washington Mutual, the Plaintiffs in this case have not asserted a claim for constructive trust as an equitable remedy for violation of ERISA § 502(a)(1)(B)

---

[93]Defendants' Motion to Dismiss, Docket Entry No. 21, p. 21 (citing Plaintiffs' Complaint, Docket Entry No. 1, pp. 14-15 ¶¶ 107-08, 112).

[94]Plaintiffs' Response, Docket Entry No. 24, p. 28.

[95]Id. at 28-29.

but, instead, as a separate claim for relief under state law. Because Plaintiffs' constructive trust claim is based on allegations that they "obtained or hold the legal right to property which they ought not, in equity and good conscience, hold and enjoy,"[96] and because the wrongful conduct at issue in this case is the failure to pay Plaintiffs the benefits they claim they are owed under the Plan, this claim relates to an ERISA-governed employee benefit plan and, therefore, is preempted. See Shaw, 103 S. Ct. at 2900.

### (g)   Count 10: Punitive Damages

Defendants argue that Plaintiffs' claim for punitive damages is preempted because "[t]he alleged 'actual damages' caused to Plaintiffs were a denial of benefits allegedly due under the Plan."[97]  Plaintiffs argue that this claim is not preempted because they would have "viable claims for punitive damages if either or both state law tort claims [for fraud and tortious interference] remain in the case."[98]  Since, however, the court has already concluded that Plaintiffs' state law claims for fraud and tortious interference are preempted by ERISA, Plaintiffs' state law claims for punitive damages are also preempted.  See North Cypress Medical

---

[96]Plaintiffs' Complaint, Docket Entry No. 1, p. 18 ¶ 149.

[97]Defendants' Motion to Dismiss, Docket Entry No. 21, p. 21.

[98]Plaintiffs' Response, Docket Entry No. 24, p. 28.

Center Operating Co. Ltd. v. Fedex Corp., 892 F. Supp. 2d 861, 870
(S.D. Tex. 2012) (declining to dismiss state law punitive damage
claims because "some state law tort claims survive[d] preemption
and could, therefore, be the basis for punitive damages").

## IV.   Conclusions and Order

For the reasons stated in § III.A.1, above, Defendants' Motion
to Dismiss Plaintiffs' claims for Plan benefits asserted under
ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), is **GRANTED** with
respect to the claims for benefits asserted against Kirk in his
personal capacity and otherwise **DENIED** because the current record
does not provide a basis for finding that the EDCP is a top hat
plan, that Defendants' assertion of PMRG's insolvency was a valid
reason for denying Plaintiff's benefit claims, that Kirk cannot be
held liable for these claims in his capacity as Plan administrator,
or that Madison Marquette cannot be held liable for these claims
under the doctrine of successor liability.

For the reasons stated in § III.A.2, above, Defendants' Motion
to Dismiss Plaintiffs' claims for interference asserted under ERISA
§ 510, 29 U.S.C. § 1140, is **DENIED** because Plaintiffs have
plausibly alleged that Defendants subjected them to an adverse
employment action undertaken with specific intent to interfere with
their rights to Plan benefits.

For the reasons stated in § III.B, above, Defendants' Motion

to Dismiss Plaintiffs' state law claims for anticipatory repudiation, fraud, tortious interference with contract and/or business relationships, unjust enrichment, equitable accounting, constructive trust, and punitive damages, is **GRANTED** because these claims are all preempted by ERISA.

Therefore, Defendants' Motion to Dismiss, Docket Entry No. 21 is **GRANTED in PART and DENIED in PART.**

Having ruled on the Defendants' Motion to Dismiss, the court concludes that this action would be appropriate for early mediation after limited paper discovery. If the parties are unable to settle this case before October 11, 2024, they will provide the court with the name and contact information of an agreed upon mediator, or request that the court refer the case to Magistrate Judge Christina A. Bryan for a settlement conference.

SIGNED at Houston, Texas, this 12th day of September, 2024.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-40-